### SAN FRANCISCO CORNICE CO. v. BEYRLE.

(Circuit Court of Appeals, Ninth Circuit. February 5, 1912.)

#### No. 1,921.

1. PATENTS (§ 312*)—VALIDITY—PRESUMPTION AND BURDEN OF PROOF.

The grant of a patent is prima facie evidence that the patentee was the first inventor of the device or discoverer of the art or process described, and of its novelty, and the burden rests on a defendant denying its validity to establish such defense beyond a reasonable doubt.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 543–549; Dec. Dig. § 312.*

Presumptions and burden of proof of invention, see note to American Sulphite Pulp Co. v. De Grasse Paper Co., 87 C. C. A. 264.]

2. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—PROCESS OF CASING WOOD WITH METAL.

The Beyrle patent, No. 887,995, for a process of casing wooden moldings, etc., with metal, by means therein described, while for an improvement in the art, was not anticipated, and discloses invention, the method shown effecting a saving in labor and time and in material; also, *held* infringed.

Appeal from the Circuit Court of the United States for the Northern District of California.

Suit in equity by Andrew Beyrle against the San Francisco Cornice Company. Decree for complainant, and defendant appeals. Affirmed.

For opinion below, see 181 Fed. 692.

The appellee was the complainant in the court below in a suit to enjoin infringement of letters patent No. 887,995, issued to him on May 19, 1908, for the art of casing wooden moldings with metal, and for an accounting.

The court below sustained the patent, enjoined the appellant from infringing the same, and referred the cause to the standing master in chancery to ascertain, take, and report an accounting of the gains and profits received by the defendant, and of damages sustained by the complainant by reason of said infringement.

The invention relates to the art of casing of wooden moldings and other forms of wood with metal. The state of the art at the date of the alleged invention and the object of the invention are set forth in the following specification contained in the application of Andrew Beyrle for a patent:

"Heretofore wooden moldings and other forms of wood have been covered with metal by first partially forming the metal for the casing in a separate machine and reducing the front end of the wooden molding or other forms of wood and then forming the metal up around the reduced front end so that it would pass through the forming die and then gripping the end of the molding and metal and drawing the same through the die. In thus covering moldings with metal the reduced end which was first put through the die by hand would be of smaller size than the other portion of the finished molding, and this reduced end had to be cut off by hand so that the molding would be of uniform appearance when used. It takes time to reduce the end of the molding and to form up the metal thereon so that it will pass through the forming die. It also takes time to partially form the metal, and there is considerable waste both of the wooden molding and the metal to cut off this reduced end and properly prepare the molding for use, and it takes time so to do.

"It is the object of my invention to cover moldings and other forms of wood with metal so that the strip of molding or other piece of wood and the metal which is to cover it can be forced through the forming die without having any portion of the same reduced in size to unfit it for use, and which will produce strips of molding or other forms of wood covered with metal, which strips will be in condition for use as soon as they pass through the forming die or dies without further preparation except to fit the metal on the ends; and to this end it consists in the method of so securing the front ends of the metal and wood that they will travel together and then pushing the wood and a metal strip with which the molding is to be covered through a die or dies by the application of pushing means applied to the rear end of the wood which causes the strip to firmly adhere to the wood and to surround so much of the exterior as it is desired to have provided with a metal facing, or covering, and in a machine for so doing. I accomplish this object by means of the machine described herein and illustrated in the accompanying drawings.   *   *   *"

After describing the machine and its operations, the applicant explains the utility of the art or process and the means by which it is made useful, as follows:

"By this method and machine it may be seen that a wooden molding can be incased with a metal sheet at one operation of the machine, and without any partial preparation of the metal in any other machine, and that after the same is incased in metal that no cutting away of any part is required, except the ordinary finishing of the ends, whereby waste of time and material is avoided."

The patent contains two claims, both of which are alleged to have been infringed. The claims are as follows:

"1. The herein described method of putting on a metal facing on wood consisting in first securing the front ends of the metal and wood so they will travel together, and then simultaneously pushing the wood and the metal for the facing of the same through a die by pushing means applied to the rear end of the wood.

"2. The herein described method of putting on a metal facing on wood consisting in securing the front ends of the metal for the facing and the wood to be faced so that they will travel together, and then applying pushing means to the rear end of the wood and simultaneously pushing the wood and the metal for the casing thereof, through a succession of dies adapted to form the metal upon the wood and embed the edge of the metal in the wood, whereby it is locked thereon."

James P. Sweeney and F. J. Kierce, for appellant.

G. E. Harpham, for appellee.

Before GILBERT and MORROW, Circuit Judges, and WOLVERTON, District Judge.

MORROW, Circuit Judge (after stating the facts as above). The defense to the action rests upon two grounds: First, that the patent is void for the want of invention or discovery; and, second, that the defendant has not infringed.

[1] With respect to the first defense, the rule is that the burden of proof is upon the defendant to establish this defense, for the grant of letters patent is prima facie evidence that the patentee is the first inventor of the device, or the discoverer of the art or process, described in the letters patent and of its novelty. Smith v. Goodyear Dental Vulcanite Co., 93 U. S. 486, 489, 23 L. Ed. 952; Lehnbeuter v. Holthaus, 105 U. S. 94, 96, 26 L. Ed. 939. Not only is the burden of proof to make this defense upon the party setting it up, but it has been held that every reasonable doubt should be resolved against him. Cantrell v. Wallick, 117 U. S. 689, 695, 6 Sup. Ct. 970, 29 L. Ed. 1017.

[2] The patent in this case is for an art or process, and the means or method for carrying it into effect and making it useful. In the Telephone Cases, 126 U. S. 1, 533, 8 Sup. Ct. 778, 781 (31 L. Ed. 863), the art consisted in controlling a force so as to make it accomplish a useful purpose. The court, speaking of the art and the means whereby it was made useful, said:

"Both discovery and invention in the popular sense of these terms were involved; discovery in finding the art, and invention in devising the means of making it useful. For such discoveries and such inventions the law has given the discoverer and inventor the right to a patent, as discoverer for the useful art, process, method of doing a thing he has found; and as inventor for the means he has devised to make his discovery one of actual value."

The court cites as authorities in support of this interpretation of the patent law Corning v. Burden, 15 How. 252, 267, 14 L. Ed. 683; Cochrane v. Deener, 94 U. S. 780, 787, 788, 24 L. Ed. 139; Tilghman v. Proctor, 102 U. S. 707, 722, 724, 725, 26 L. Ed. 279; Fermentation Co. v. Maus, 122 U. S. 413, 427, 428, 7 Sup. Ct. 1304, 30 L. Ed. 1193. In Cochrane v. Deener the court explained what was meant in the patent law by art and process:

"A process is a mode of treatment of certain materials to produce a given result. It is an act, or a series of acts, performed upon the subject-matter to be transformed and reduced to a different state or thing. If new and useful, it is just as patentable as a piece of machinery. In the language of the patent law, it is an art. The machinery pointed out as suitable to perform the process may or may not be new or patentable; whilst the process itself may be altogether new and produce an entirely new result. The process requires that certain things should be done with certain substances, and in a certain order; but the tools to be used in doing this may be of secondary consequence."

In Leeds & Catlin v. Victor Talking Machine Co., 213 U. S. 301, 318, 29 Sup. Ct. 495, 500 (53 L. Ed. 805), the court said:

"A process and an apparatus by which it is performed are distinct things. They may be found in one patent. They may be made the subject of different patents."

In Expanded Metal Co. v. Bradford, 214 U. S. 366, 29 Sup. Ct. 652, 53 L. Ed. 1034, the patent in suit was for an improvement in the method of making expanded sheet metal. The state of the art at the time the patent was issued included a method of making open meshes in metal sheets or plates by simultaneously cutting and stretching the metal. The method described in the patent showed a method by which the metal was first slit, bent, and stretched, and then a second operation co-ordinating with the first in slitting, bending, and stretching in places alternate to the first-mentioned portions. The two operations combined produced a new and useful result in a sheet or plate of metal of the same length as the original sheet or plate. The operation could also be applied to much heavier metal than could be successfully manipulated by the old process. This was held to be a substantial improvement of the art involving mechanical operations, and producing a new and useful result independently of the particular mechanism for performing such process and was held to be valid by the court.

At the date of complainant's invention or discovery in the present case, the state of the art had not advanced beyond covering wooden moldings and other forms of wood with metal by first partially forming the metal for the casing by hand or in a separate machine, and reducing the front end of the wooden molding or other forms of wood, and then forming the metal around the reduced front end so that it would pass through the forming die. In thus covering the moldings the reduced end which was first put through the die by hand, and afterwards pulled through with grapping tongs, would be of smaller size than the other portion of the finished molding, and this reduced end had to be cut off by hand, so that the molding would be of uniform appearance when used. It took time to reduce the end of the molding, and to form up the metal thereon so that it would pass through the forming die. It also took time to partially form the metal on the reduced end, and afterwards cut it off, and, in addition, there was considerable waste in the wooden molding and in the metal cut off from the reduced end. It was the object of complainant's art or process to cover the molding or other form of wood with metal by one machine, and without having any portion of the covered molding reduced in size so as to unfit it for use. There was, therefore, in the new method a saving of time and material which is the proper subject of a patent. Corning v. Burden, 15 How. 252, 268, 14 L. Ed. 683; Fermentation Co. v. Maus, 122 U. S. 413, 7 Sup. Ct. 1304, 30 L. Ed. 1193.

The defendant contended that complainant's invention or discovery had been anticipated, and introduced as evidence of such anticipation the following patents: No. 617,363, granted to G. Skogse, January 10, 1899, for a machine for rolling metal tubes. No. 432,726, granted to W. H. Cosper, July, 22, 1890, for a machine for manufacturing weather stripping. No. 157,867, granted to Frederick Pollard, December 15, 1874, machines for sheathing moldings with sheet metal.

No. 700,468, granted to W. P. Appleyard, assignor, to Metal Plated Car & Lumber Company, May 20, 1902, for a machine for covering strips of timber with metal. No. 43,008, granted to A. J. Campbell, June 7, 1864, for improved tool for manufacturing metallic-covered sashes for show cases. No. 70,847, granted to R. Howden, November 12, 1867, for an improved molding-facing machine. No. 383,238, granted to J. S. Palmer, May 22, 1888, for a method of preparing hollow stock for the manufacture of jewelry.

All of these patents, except the last, are for machines. The last-named patent is for a method of imparting to plated thimbles or shells a varying thickness, consisting in submitting the same to the action of a reducing device adapted for shaving off or otherwise removing the desired portion of the plate at the required parts. These patents were all cited by the Examiner in the Patent Office, and upon such citation the claims of the complainant in this case were formulated in terms acceptable to the examiner, and as they now stand in the patent. These proceedings raise a presumption in favor of the claims, not overcome by a careful examination of these prior patents. Evidence was introduced on the part of the complainant in which the similarities and differences between these patents and the patent in suit were pointed out in the following particulars:

The process described in the patent in suit consists in securing the front end of the metal with which the wood is to be covered to the front end of the wood, and then pushing the same through dies by pushing means applied to the rear end of the wood. By this process the metal is stretched as it passes through the die, and all inequalities are stretched out of it, and it is compelled to lie upon the wood like a close-fitting glove.

In Skogse's patent, No. 617,363, the machine is for making tubes from metal and consists in using two strips of metal, one narrower than the other, and eventually shaping these strips in the form of a circular tube opening longitudinally by pulling means at the front end of the tube. In this sense Skogse's patent is entirely different from the patent sued on, as there is no pushing process whatever employed in it.

In Pollard's patent, No. 157,867, the machine is for covering show-case molding with sheet metal. The method employed consists of three dies through which the wooden molding and the sheet metal to cover the same are drawn through the die by a grip attached to the forward end, and both the metal and the wood are drawn through the dies.

In Appleyard's patent, No. 700,468, the machine is for covering various shaped wood moldings by means of rollers and guides through which the wooden molding and the sheet metal to cover the same are gradually and successfully drawn through these forming rollers by means of toothed or corrugated feeding rollers denting into the under-side of the wooden molding as the molding travels forward. There was evidence that an objectionable feature of this device was where the molding or the wood block was desired to be covered around its four sides the underside would in all cases in this machine become deformed by the crushing of the wood by the teeth in the feeding roller. In this process, if there was any inequality in the metal with which

the wood was covered, it would not be stretched out, but would be rolled through and appear in the finished product. In the Appleyard process the material is pulled through the machine by the toothed rollers, and there are no pushing means applied to the rear end of the wood to push it through the dies.

In Campbell's patent, No. 43,008, the machine is for covering sashes for showcases by passing the wooden sash and the sheet metal to cover the same through a set of dies which form the metal on the wood. This is accomplished by drawing or pulling the wooden metal through the dies by means of a gripping tong attached to the fore end of the wood and metal.

In Howden's patent, No. 70,847, the machine is for covering wooden moldings with sheet metal by passing the same through a single adjustable die which gradually forms the sheet metal around the exact shape of the molding used and covers the molding with the metal sheathing by drawing the same through the dies through gripping means attached to the forward end of the same.

In Palmer's patent, No. 383,238, a method is described for trimming or shaving metallic tubes. Nothing disclosed in it shows the formation of the tubes, and consists merely of the various dies through which these tubes to be reduced in thickness are passed.

There was evidence also tending to show that only in the patent sued on were there means for pushing the wood and metal through dies by means applied to the rear end of the wood; nor could such means be inferred by the descriptions given in those patents, as in all cases they specifically mention the fact that the material to be covered is drawn through the dies, except in the one patent where no mention is made as to how the material is passed through the die.

With respect to the second defense that the defendant has not infringed, we think it is sufficient to refer to the stipulation entered into by the parties to the action, as follows:

"(2) That since the 19th day of May, 1908, and before the filing of the bill of complaint in the above-entitled action at the city and county of San Francisco, state of California, the defendant cased wooden moldings, with metal, and sold the moldings thus cased at the said city and county of San Francisco, state of California. That in casing such wood with metal the defendant used two machines. In one machine the sheet metal with which the wood molding was to be cased and the wood molding were placed together upon a table which contained a forming die or series of dies upon the top thereof. The wood molding and the metal to case the same were then forced or pulled through the die or series of dies by means of a piece of iron which was hooked onto the rear end of the wood. This piece of iron which was hooked onto the rear end of the wood was attached to an iron rod which extended underneath the table to the forward part of the same and was connected up to mechanism, which drew the rod forward, thereby causing the wood and metal to be forced or pulled through the forming dies.

"Another machine operated by the defendant operated as follows: The wood and the metal for casing the same were placed upon a table which had situate thereon a forming die or series of dies. A push bar formed of wooden scantling about three inches square, and of the necessary length was brought into contact with the rear end of the wood. This push bar was operated by mechanism beneath the table which moved the push bar forward, and caused it to push the wood and metal through the forming die or dies."

These two machines, we think, are unquestionably infringement of the art or process described in complainant's patent.

The decree of the Circuit Court is affirmed.

WOLVERTON, District Judge, concurs.