PARSONS et al. v. MINNEAPOLIS THRESHING-MACH. CO.

(Circuit Court, D. Minnesota, Fourth Division. March 2, 1901.)

1. PATENTS—INVENTION—NEW COMBINATION OF OLD ELEMENTS.
The assembling of old and well-known devices or elements in a new combination, in a machine, in order to constitute patentable invention, must either accomplish a new and useful result, or an old result more effectively, in a marked and obvious degree, so as to be accepted by users of such machines as an obvious improvement upon those used before.

2. SAME—BAND CUTTER AND FEEDER FOR THRESHING MACHINES.
The Albertus and Johnson patent, No. 556,326, for a band cutter and feeder for threshing machines, is void for lack of patentable invention; the machine shown and described being a combination of old devices which produces no new result, and which has not been recognized by the public as any improvement upon the machines previously in use. Also, held not infringed, conceding its validity.

3. SAME—INFRINGEMENT—PATENT FOR COMBINATION OF OLD DEVICES.
A patent for a combination of old devices is not infringed by another combination which omits any of the devices of the patented combination without substituting therefor something which is its mechanical equivalent.

In Equity. Suit for infringement of patent. On final hearing.

John E. Stryker, for complainants.
Paul & Hawley, for defendant.

LOCHREN, District Judge. This is a bill in equity brought by complainants, as assignees and owners of letters patent No. 556,326, issued March 17, 1896, to Otto Albertus and Martin Johnson, for band cutter and feeder, charging the defendant with infringement

of the invention and improvement described in and secured by said letters patent, by the making, selling, and using of band cutters and feeders embodying such invention and improvement, and with still continuing such infringement, and praying for a perpetual injunction and an accounting. The answer of defendant takes issue upon the charge of infringement, and also denies the validity of the patent, averring that, in view of the state of the art before said alleged invention, the alleged improvement described and claimed in said letters patent did not constitute a patentable invention or discovery, but had been wholly anticipated and described in prior letters patent, and publicly known and used in the United States. Upon the hearing the complainants confined their charge of infringement to the second claim of said patent, which is as follows:

"(2) A band cutter and feeder comprising a table having its outer portion constructed to fold, and having the inner portion deflected at an abrupt angle; stay rods arranged to support the outer portion of the table when extended, and to secure it in place when folded; a longitudinal partition detachably connected with the table; a carrier arranged to travel upon the said table and conform to the outline thereof; a second carrier located opposite the inner end of the table, and acting in conjunction with the inner deflected portion of the carrier thereof, and traveling at a different relative rate of speed; guards interposed between the co-operating portions of the said carriers; a vibrating shoe located at the delivery end of the table carrier; and a band-cutting mechanism,—substantially as specified."

Complainants do not assert that this patent assumes to cover any newly-invented device or devices, but only an alleged new combination of devices and appliances, all of which were old and well known before this alleged invention. It is too well settled to require citation of authorities that a patentable invention may consist entirely in the new combination or arrangement of old and well-known ingredients or devices, provided a new and useful result is thereby attained, and also where such new combination of old devices and elements produces a machine markedly more effective in producing old results, being for that reason accepted by the public as an obvious improvement upon what has been used before, and thus comes into general use, superseding other machines for the same use, or becoming a favorite, and sought after and regarded with preference by users of such machines. The production of new and useful results, or of old results more effectively, in a marked and obvious degree, is such evidence of invention or discovery as will support a patent, where the devices, although all old, are assembled in a new combination.

Machines called "feeders," for conveying bundles of grain in succession, with the heads forward, to the cylinders of threshing machines, upon carriers having transverse slats with metal spikes or teeth to engage the bundles, and devices, usually knives on revolving wheels, to cut the bands of the passing bundles, and other devices to loosen the mass of the bundles and accelerate the upper part of each so that the bundles shall not reach the cylinder at once, or in a compact mass, have long been used, and were described in many patents years before the alleged invention described in the patent.

in suit. Most of these prior patents describe machines constructed on the same general plan shown by the patent in suit, differing only in the form and arrangement of details and devices, and all producing the same result in the same way and by substantially the same means. Every detail of the patent in suit operative in the actual working of the machine was described and shown in such prior patents, and in some the assembling of the parts was substantially the same. Thus the patent No. 513,698, issued January 30, 1894, to Gustav Anderson, shows and describes an endless carrier mounted on rollers to carry forward the bundles, with a detachable partition or dividing board on its center line; a band cutter substantially similar to that shown in the patent in suit; and a second overhanging carrier, with slats toothed, which engage the top of the bundles at the end of the main carrier, and as they come on the vibrating shoe, which is also present; and this carrier does the same work as the second carrier in the patent in suit. The Anderson machine has not on its main carrier the deflected inner end which is shown in the patent in suit, and which is also shown in conjunction with an upper carrier (which also serves as band cutter) in patent No. 291,430, issued to Orrin C. Van Ness January 1, 1884, and in patent No. 501,511, issued to Walter Howard July 18, 1893. In the Anderson patent the upper carrier, which also has guards interposed between the co-operating parts of the carriers, engages the top or upper part of the loosened bundles at the end of, and while they are yet on, the main carrier, and as they are coming upon the vibrating shoe, and by its more rapid movement separates and advances that part of each bundle the same as is done by the upper carrier of the patent in suit. The particular form of the carriers, and whether the main carrier shall be single or in sections, and with or without a deflected inner end, and the point, after the band is cut, at which the upper carrier shall engage and spread and distribute the bundles, was evidently matter for mechanical choice and selection before and at the time of the alleged invention claimed by the patent in suit. In whatever way these old devices were assembled in these prior patents, they did the work in the same way, by the same means, and produced only the same result. This is obviously all that is done by the combination shown by the patent in suit as to all its parts in use while the machine is in operation. But, as such machine is intended to be moved from place to place to perform its work, any new device or combination making it more convenient for removal must add to its value. The device for folding the outer part of the large carrier by swinging it under the other on hinges was old, and is shown in many of the prior patents. The holding it in place when folded by a hook on the end of the rod, which when in operation rests on the ground to support the end, like the legs in older patents, is perhaps a fanciful but exact equivalent for the short hook used for the same purpose shown in older patents. There is no evidence in the case that the machine described in the patent in suit produces any new or useful result, or that it produces the old results more effectively than was done

before, or that it has been accepted by the public as an improvement. It does not appear that the patentees or complainants ever have manufactured or put on the market any machines constructed under the patent in suit. Under such circumstances, the opinion, merely, of one witness or more, that such machine would be superior to the machines in the market, counts for but little, and does not overcome the probative force of the fact that the patent in suit has lain dormant—a mere paper patent—during the four years since it was issued. From these facts, I am brought to the conclusion that there was no invention or patentable novelty in the combination of old devices shown by the patent in suit. "It was never the object of these laws to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures. Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stimulate invention." Atlantic Works v. Brady, 107 U. S. 192, 200, 2 Sup. Ct. 225, 27 L. Ed. 438; Slawson v. Railroad Co., 107 U. S. 649, 654, 2 Sup. Ct. 663, 27 L. Ed. 576.

But if the patent is valid there is no infringement. A patent for a combination of old devices is not infringed by another combination which omits any of the devices of the patented combination without substituting therefor something which is its mechanical equivalent. One of the elements or devices of the second claim of the patent in suit is "guards interposed between the co-operating portions of the said carrier"; that is, between the co-operating parts of the upper or second carrier and the deflected end of the main carrier. These guards are shown in the drawings as attached to the frame below the second carrier, and are described in the specifications as "metal straps, and may be provided in any desired number; two being sufficient; one being located near each side of the machine." The purpose of the guards is stated to be to prevent the toothed crossbars of the upper carrier from entering the threshing machine, should they become detached from their supporting belt. The defendant's structure has no such guards. The cleats nailed to the frame of defendant's upper carrier merely protect the chains at the sides of that carrier, and do not come between the toothed crossbars of the separate carriers, which are the only co-operating parts of the carriers, and would not prevent such toothed crossbars, if detached, from going into the cylinder of the threshing machine. The stay rods in the patent in suit, arranged to support the outer portion of the table when extended, and to secure it in place when folded, as shown in the drawings of the patent, being legs standing on the ground, supporting the end of the extended table, with a hook on the lower end to turn up and catch on a pin or eye and hold the end of the carrier in place when folded, do not appear in defendant's machine. That has a rod by which the outer end of the table, when extended, is hung up by the attachment of the rod to a higher part of the machine, which is certainly not a mechanical equivalent of a foot under the table resting upon the ground. It

effects the same result of holding the end of the table secure in its extended position, but this is done in a different way, and upon different mechanical principles. A decree will be entered dismissing the bill of complaint, with costs.