## DANIEL SLOTE & CO. v. CHARLES A. STRATTON CO.

(Circuit Court, S. D. New York. February 15, 1908.)

PATENTS—INVENTION—BLANK BOOK.
   The Bowman patent, No. 468,780, for a blank book, claim 2, in view of the prior art, is void for lack of patentable invention.

In Equity. Suit to restrain alleged infringement of United States letters patent, No 468,780, dated February 16, 1892, to Frank Bowman for blank book, and for an accounting.

Harlan Moore (Lucius E. Varney, of counsel), for complainant.
Duncan & Duncan (Frederick S. Duncan and Harry L. Duncan, of counsel), for defendant.

RAY, District Judge. The alleged invention relates to certain alleged improvements in the manufacture of blank books, and has for its object to provide a very strong and durable outer back, and to provide improved means whereby the inner back may be securely fastened to the outer back and to the covers of the book. Also, to cushion the outer back or the fabric enveloping it—that is, to provide a slightly yielding surface which will secure a better impress of the tools with which the marking and printing on the outer back is done without danger of breaking the outer back or cutting the fabric inclosing it.

Claim 2 of the patent in suit, which seems to be the one relied on, reads as follows:

"A book consisting of a rigid outer back, a rigid inner back, a strip of yielding material glued between said backs, thereby securing them together, signatures secured to said inner back, the signature-fastenings passing through the inner back and embedded in the interposed strip, and covers secured to the backs, substantially as described."

This claim calls for a book consisting of (1) a rigid outer back; (2) a rigid inner back; (3) a strip of yielding material glued between said backs, thereby securing them together; (4) signatures secured to said inner back, the signature-fastenings passing through the inner back and embedded in the interposed strip; and (5) covers secured to the backs, all substantially as described. If any patentable invention is to be found in this structure we must seek its disclosure in the specifications unless it resides in the conception of embedding the signature-fastenings in the interposed strip of yielding material.

Rigid backs for books are very old. Double backs are old. Signatures secured to the inner back are old. Signature-fastenings passing through the inner back are old. Covers secured to the backs are old. So, interposing a strip of material between the double backs is old, as well as the gluing all together. The use of fibrous or yielding material in constructing backs for books is also old. So, too, various means for connecting the backs to the covers are old. However, the patentee says we are to find disclosed improved means for fastening the inner back to the outer back and improved means for fastening the inner back to the covers of the book. For per-

tinent references, see patent to George Smith, dated February 20, 1872, No. 123,947, for improvement in book binding; patent to Reynolds, dated May 16, 1876, No. 177,354, for improvement in the manufacture of books; patent to Frank Bowman, dated January 30, 1877, No. 186,791, for improvement in blank books; patent to Kena, dated May 20, 1879, No. 215,524, for improvement in albums; patent to Sneider, dated September 9, 1879, No. 219,370, for improvement in scrap book; patent to Hartung, dated March 1, 1881, No. 238,233, for invoice or scrap book; patent to Baumfaulk, dated May 3, 1881, No. 240,805, for binding books; patent to Bowman, dated July 17, 1883, No. 281,657, for back for books; patent to Nagle and Chalifoux, dated November 4, 1884, No. 307,488, for blank book; patent to Huether, dated December 27, 1887, No. 375,488, for book binding; patent to Ries, dated July 9, 1889, No. 406,476, for book binding; patent to Ringo, dated December 9, 1890, No. 442,395, for sample book; and patent to Bowman, dated February 16, 1892, No. 469,054, for blank book.

Before dealing with the details of the prior art, and keeping in mind the fact that the claim in issue of the patent in suit deals exclusively with the back and the mode and means for attaching the back to the covers, we will ascertain the exact construction of claim 2 as demanded by the specifications. The rigid outer back or strip, a, formed of a flat piece of binder's board, or other suitable stiff material, has secured thereto on its outer side a cushion, b, formed of leather or flannel, or any suitable cushioning material. The patentee gives a preferred manner of attaching this cushioning material to the outer or under side of the outer back, viz., the cushion, b, is first inclosed in a thin glue-excluding fabric, c, and then secured to this back by gluing or in any suitable manner. The edges of the inclosing fabric are secured next to the rigid outer back in order that the glue shall be effectually excluded from the cushion, and also that a smooth surface may be secured and presented on the outer side of the outer back to which is glued the outer finishing fabric, d. The longitudinal edges of this outer finishing fabric, d, extend beyond the longitudinal edges of this outer back, and are secured to the outer sides of the covers of the book at their inner edges (edges next the back), "thus forming a strong flexible connection between the outer back and the covers." The mode and manner of securing this outer finishing fabric to the covers is not mentioned, but presumably it is done by gluing. This mode of securing the outer back to the covers is obvious and simple and old, and presents no new or novel feature. It is distinctly and plainly illustrated and described in the Smith patent of 1872, No. 123,947, and others. Smith having described his back says:

"I will now describe the second part of my invention, the back, A, being of the construction last described. B is the cover board or base [being the cover] united to the back by the outer and inner coverings, e, f, denoted in solid black, so as to form the hinge at the intersection of the cover and back."

This outer covering, e, of Smith is the same as the outer finishing fabric, d, of the patent in suit.

Having given the construction of the outer back and its connection with and direct attachment to the covers we will proceed to consider the connection of the outer back with the inner back and its connection with and attachment to the covers. "To the inner [upper, as the book lies open before us] side of the outer back is glued a strip, f, of flannel or leather or any suitable material, which entirely covers the back, a [outer back on its upper side] and forms a yielding surface, to which the rigid inner back, g, is glued." While the specifications do not purport to describe the inner back, except as a rigid back and as having the signatures stitched or stapled thereto, and the strip, f, of flannel, or leather, or any suitable material glued thereto on its under or outer side, thus connecting the inner back to the outer back, the flannel or leather being interposed and glued to each, the drawings show it to be a rigid strip of the same size and shape, substantially, of the rigid outer back, a. The patentee says:

"The sections or signatures [leaves] are secured to the inner back by stitching or stapling, said fastening passing through the fabric, h, and the rigid inner back as clearly shown in Fig. 2 of the drawings."

Now comes the mode, manner and means of attaching this inner back directly to the covers. We have already seen that it is indirectly attached by "the outer or finishing fabric, d," which directly connects and attaches the outer back to the covers, for the outer back being glued to the inner back this indirect connection is made. The patentee says:

"The inner back is reinforced by the fabric, h, which is glued to its upper or inner surface and extends beyond the longitudinal edges of the inner back, said extensions being glued to the inner sides of the covers at their inner edges." (Edges next the back.)

This is all. Turn to the Smith patent, before referred to, and we have this precise mode of attaching the inner back to the covers both illustrated and described. The mode and manner of and means for attaching the back as a whole to the covers is the same in the Smith patent of 1872 as in the patent in suit. The same idea is clearly shown in the patent to Kena, No. 215,524, of 1879. It says:

"A piece of canvass or leather, b, is secured in the back, and is inserted into the rear edges of book-covers, thus flexibly connecting the same."

Also:

"Said strips, E [to which the leaves are fastened] at their opposite edges, are glued or otherwise secured upon a flap of canvass or leather, F, side by side," thus forming an inner back, "the projecting edges of said flap being placed under the strips, a, for holding the leaves to the cover," etc.

See, also, Hartung, No. 238,233, and Nagle and Chalifoux, No. 307, 488.

In this last patent it is said:

"The cover of the book is composed of two or more thicknesses of paper board, C and C'. The flesher or sheep, B [to which the leaves are attached] extends between these paper boards, where it is firmly secured. D is the back-board of the book, L is a flexible lining attached to either or both sides of the back-board, D, with its edges extending beyond the back-board and firmly connected with the extended edge of the under board of the cover, so as to pass over the joint of the cover to strengthen it."

See, also, Huether patent, No. 375,488, and Ringo, No. 442,395. Clearly, in view of the prior art, no patentable invention is disclosed in the means, mode, and manner, of connecting the backs, or either back, to the covers. Such change as can be discovered, if any, is a change of form only or of place of attachment, a mere matter of selection or judgment. This is not invention, even if a slightly better result is obtained. Now, what are the means for fastening the inner back to the outer back? The patentee describes these as follows:

"To the inner side of the outer back is glued a strip, f, of flannel or leather, or any suitable material, which entirely covers the back, a [on its upper or inner surface meaning] and forms a yielding surface, to which the rigid inner back, g, is glued."

The alleged improved means consist therefore in interposing this strip of yielding material between the rigid outer back and the rigid inner back and gluing it to each. When this is done we have an entire back made up as follows: (1) "The outer or finishing fabric, d; (2) the thin glue-excluding fabric, c, inclosing the cushion, b; (3) the cushion, b, inclosed in 2, or c; (4) the rigid outer back or strip, formed of suitable stiff material; (5) the interposed" strip, f, of flannel or leather, or any suitable material; (6) the rigid back piece to which are fastened or secured the sections of leaves or signatures by stitching or stapling, such stitches or staples passing through this inner back piece; and (7) lastly the reinforcing fabric, h, which is glued "to the upper or inner surface" of the rigid inner back. These parts are all glued together except that the cushion, b, in and forming a part of the outer back, is "inclosed in the thin glue-excluding fabric, c, but as the cushion is wholly inclosed therein, and it is glued to the adjacent parts, all the parts are, in effect, glued together. The patentee claims inventon in providing this cushion, for he says:

"Another of its objects is to cushion the outer back or the fabric enveloping it—that is, to provide a slightly yielding surface which will secure a better impress of the tools with which the marking and printing on the outer back is done without danger of breaking the outer back or cutting the fabric inclosing it."

However, neither claim 1 nor claim 2 includes this cushion, and I do not find that it is claimed defendant uses it. Claims 3, 4, and 5 include the cushion as an element. Proof of infringement is confined to claim 2. The patentee thus states the object of interposing this strip of yielding material between the outer and inner backs, viz.:

"The object of providing this yielding embedding surface, f, is to permit the projections or roughness formed on the under side of the inner back by stitching or stapling the sections to the upper side thereof to be embedded in this yielding surface, thereby more securely fastening said inner back to the outer back. The roughness or projections formed by the stitching is an advantage instead of a disadvantage, as when they are embedded and glued in the strip, f, they aid materially in securing the inner back to the outer back, as is evident."

Returning then to the interposed strip of yielding material glued between said backs we will consult the prior art to ascertain whether or not there is anything new or novel in its use; whether or not we have here a patentable conception accompanied by suitable means

for making it useful, for its applications. And, if so, does defendant use it?

Defendant has put in evidence three exhibits, "Defendant's Exhibit, Sneider Book No. 1 (1884)"; "Defendant's Exhibit, Sneider Book No. 2 (1880)"; and "Defendant's Exhibit, Sneider Book No. 3 (1880)." Each carries a printed label, viz., No. 1, "Patented September 9th, 1879, Robert Sneider"; No. 2, "Patented September 9th, 1879, Robert Sneider"; and No. 3, "Robert Sneider's Patent Scrap, Invoice, and File Book, Patented Sept. 9th, 1879," and "33 Scrap Book. 9 x 11½ oblong, Half Russia, 125 pages, Brown Card Stock, Robert Sneider's Patent September 9th, 1879." Each of these contains unmistakable evidence of their authenticity and ancient origin and construction. Each was made long before the patent in suit was applied for, and has been in existence and use since. Mr. Sneider gave evidence showing their construction, date, use, and preservation. Exhibits Nos. 1 and 3 have covers and No. 2 has had evidently, but they have been torn off. The outer back of No. 2 is missing, but the exhibit shows it has been torn off. Nos. 1 and 3 have each a rigid outer back and a rigid inner back, the outer back of No. 3 being more rigid than that of No. 2 which is of stiff leather. In Nos. 1 and 3 the rigid inner back is attached to the rigid outer back with heavy brown paper and some sort of cloth interposed, the interposed material being glued to the respective backs. No. 2 has the rigid inner back with the cloth still adhering and bearing abundant evidence of having been torn from the outer back. Each of these exhibits has signatures fastened to the rigid inner back by stapling passing through it and clinched on the under or outer side. On and over these clenched ends the cloth and paper, yielding material, is glued, covering the entire under or outer surface of the inner rigid back. Then this cloth, etc., is firmly glued to the upper or inner surface of the outer rigid back. This is the precise construction of the patent in suit so far as the interposed yielding material, and "yielding embedding surface, f," are concerned. One would think that Bowman had the Sneider construction before him and was describing it when he drew this claim 2 of the patent in suit and the specifications of the patent. While the Sneider patent, in its specifications, does not specifically describe and claim an interposed yielding material between the two backs his drawings clearly show it, and we have long and well-known user of books and book backs of this construction. But the prior art describes this construction, as well as the double backs with staples passing through the inner back. In a patent to Frank Bowman, dated January 30, 1877, No. 186,791, for improvement in blank books, he says:

"A represents a stiff back for a book, to which the sections, B B, of paper are fastened by means of wire staples, C C. These staples are passed from the front through the sections and through the stiff back, A, the sections being placed at suitable distances apart, and the ends of the staples clinched on the rear side of the back, A, by bending the ends of each staple towards each other. This wire-stitched book is intended to be made on a sewing-machine, and avoids perforating the back previous to placing the wire, as by my plan the wire is driven through the back and the section, and it cuts, stitches, and clinches the wire at one and the same operation. * * * I am aware

that books have been fastened with wire staples inserted from the back toward the front, and the ends of each staple passing through different sections of the book. Such invention, as known to me, requires, however, a double board or two stiff backs, while by my invention but one board or stiff back is required."

In that patent he was trying to obviate the necessity of having two stiff, or rigid backs.

In a patent to Frank Bowman of July 17, 1883, No. 281,657, for back for books, he says:

"This invention relates to certain improvements in backs for books, and it is particularly designed for use in connection with that class of books in which the sections of papers forming the leaves are secured to the back by means of wire or thread, and which are principally employed as invoice and sample books, although sometimes it may be used for other purposes, where the binding together of miscellaneous matters in the book is the object required; and the invention has for its object to provide a neat rounded back, to which the sections may be attached by means of wire or thread, as more fully hereinafter specified. These objects I attain by the means illustrated in the accompanying drawings, in which Fig. 1 represents a perspective view of a portion of a book-back; Fig. 2, a transverse section of the same; and Fig. 3, a like view, having a covering applied to both sides of the back. The letter 'A' indicates the book-back, which is constructed of pasteboard or other suitable material scored longitudinally, as at 'b,' so as to form a series of parallel strips, a, of sufficient rigidity to properly support the sections of paper forming the leaves. The leaves or sections are secured by wires or staples, as usual, and when the book is opened such construction will allow a free spreading out of the leaves, as the back is free to bend for the purpose. The back thus formed is provided with a flexible lining of leather, cloth, or other suitable material, whereby flexibility and strength are secured."

In a patent to Baumfaulk, dated May 3, 1881, No. 240,805, for binding books, we have the ends of the signatures roughened, etc., and then glue spread thereon on which is laid cotton flannel, and then this is glued to the back. The patentee says:

"The description already given applies when the back of the book is rounded, as shown in Figs. 1 and 2. If the book is straight-backed, as shown in Fig. 3, which is the style employed when the book need not open very widely, the leaves, A, are placed between the two movable sides of the press, a a, which sides are cut away near their tops, so as to leave a wider space there than below, and the leaves, A, put between these sides, a a, are thus allowed to spread more widely at their upper portion, e, than below. The book is then rasped in the manner above described, the layer of thin glue spread thereon, and on this layer is placed and pressed cotton wadding or similar substance, upon which the glue is allowed to dry. The cotton wadding adds to the fiber by which the rasped leaves are finally attached to the back of the binding. Upon this surface, when dry, is spread a coating of hot strong glue, and on this the cotton flannel, f, as heretofore described, is placed, extending slightly beyond the edges of the back. Both the round-back and straight-back books are fastened in their outside covers with the aid of the piece, f, in the ordinary manner."

True, this is not interposing a yielding material between two stiff or rigid backs, an inner and an outer, but it is using such material between the signatures and back for covering, welding, and evening up the rough surface or ends of the signatures and is equivalent, as a conception, to using the same material for the purpose described in the patent in suit.

In gluing one surface to another it would occur to anyone as it did to Sneider, evidently, that if one was covered partially, with rough projections such as thread or bent wire ends to such an extent as to prevent their firm union, that some means should be employed to obviate the liability of a partial union of the surfaces. Would it require thought amounting to patentable invention to interpose some pliable material into which the projections would penetrate, thus level... up the one surface to meet the other at all points? These projections, unless drowned in glue, would necessarily prevent the surface of a hard rigid material forming the outer back from coming in contact with that of the other, or inner back. That the remedy was obvious cannot be doubted; that it had been applied by Sneider is certain. He says on cross-examination:

"X-Q. 51. Referring to Fig. 4, does the interposed strip which you have pointed out in that figure have anything to do with securing the covers to the back? A. It is placed in there between to cover all roughness of the inner part and to adhere better to the cover."

Again, X-Q. 70 to 76, he said:

"X-Q. 70. Did you ever use the construction illustrated in the drawings, and particularly in Fig. 4? A. We used part round and part flat. X-Q. 71. I will repeat my question in a little clearer form. Where you employ the round headed rivets, did you ever construct a book in which these rivets were arranged in respect to the interposed pad strip and the outer and inner back as illustrated in Fig. 4? A. Yes, sir. X-Q. 72. In that figure the outer ends of the rivets appear to be wholly embedded in the substance of the outer back, do they not? A. They do. X-Q. 73. How did you secure the two backs together in such a construction? A. Gluing them together and pressing them with weights. X-Q. 74. I don't suppose the interposed pad strip was of much use in this case. Am I correct? A. Certainly it was. X-Q. 75. Did it help secure the backs together? A. It did. X-Q. 76. But I understood you to say that this interposed pad strip was used 'to smooth' the inner back, and thus form an even surface for gluing to the outer back when the rivet ends projected beyond the inner back. This evidently is not the case in the construction you refer to, is it? A. It is."

In view of the prior art, as disclosed by the record, I fail to find any patentable invention in claim 2 of the patent in suit. The device disclosed had been in use long before this patent was applied for. See, also, pages 117–119 of defendant's exhibit Cram Hand Book, Bookbinding for Amateurs, where pasting on paper for evening up uneven surfaces is pointed out.

I do not need to cite authorities. Not all improvements are invention. There must be something more. Loom Co. v. Higgins, 105 U. S. 591, 26 L. Ed. 1177; Pearce v. Mulford, 102 U. S. 112, 26 L. Ed. 93; Burt v. Evory, 133 U. S. 349, 10 Sup. Ct. 394, 33 L. Ed. 647; Dodge Coal Storage Co. v. N. Y. C. & H. R. R. Co., 150 Fed. 738, 80 C. C. A. 404. It is not necessary to find the precise process or structure in the prior art. It is all-sufficient if we find the path open, made so clear that the ordinary mechanic skilled in the art would see and construct and apply.

There will be a decree dismissing the bill, with costs.