stract effect of a machine, but only for the machine which produces it. Corning v. Burden, 15 How. 252, 14 L. Ed. 683. Nor may a patent be granted for a process which involves nothing more than the operation of a piece of mechanism. Risdon Works v. Medart, 158 U. S. 68, 15 S. Ct. 745, 39 L. Ed. 899. Operations consisting partly or wholly in the employment of heat, light, or electricity or some other force producing chemical change, are subject to patents. Operations which consist entirely of mechanical transactions and which are only the peculiar functions of machines, are not patentable. Operations which consist entirely of mechanical transactions, but which may be performed by hand or by any of the several different mechanisms or machines are patentable. Expanded Metal Co. v. Bradford, 214 U. S. 366, 29 S. Ct. 652, 53 L. Ed. 1034; Walker on Patents, § 3.

[10] This operation of the Gold patent could not conceivably be performed by hand, and it is inseparable from the mechanism. Steam is dealt with, and the act performed was the liberation or expansion of steam into the radiating pipes at a rate controlled by the expansion of the thermostatic device under the heat of discharging steam. These operations are the function of the thermostat and the valve which it operates. They are necessarily of a piece of mechanism, and could not be performed without this mechanism. We are satisfied the operations cannot be patented as an art or a process. Validity could rest only for the mechanism itself. The patent for that has been adjudicated void. It follows that the decree below must be affirmed.

Decree affirmed.

---

## LANE v. CRAFTSMEN FILM LABORA-TORIES, Inc.

(Circuit Court of Appeals, Second Circuit. March 20, 1925.)

No. 236.

1. Patents ⬤=32—That improvement supplants long used cumbersome methods is evidence of invention.

Where a simple improvement replaces cumbersome methods, long used in the art, the history of the art furnishes good evidence that the change is invention.

2. Patents ⬤=328—1,300,178, process for production of moving picture text in white letters on black background, held valid.

Patent 1,300,178, being a process by which a moving picture text may be produced to cast upon a screen consisting of white letters on a black background, the process substituting sensitized paper for a photographic plate, held valid.

Appeal from the District Court of the United States for the Southern District of New York.

Patent infringement suit by George Lane against the Craftsmen Film Laboratories, Inc. Decree for plaintiff, and defendant appeals. Affirmed.

The opinion of Learned Hand, District Judge, in the court below, was as follows:

"As the defendant admits infringement of claims 1 and 2, and as the plaintiff has failed to prove infringement of claim 3, as to which it consents that the bill shall be dismissed, the suit comes down to the question of validity alone. The invention is for a process by which a moving picture text may be produced to cast upon a screen, consisting of white letters on a black background. The process starts by simply printing the text in black type upon a diaphanous paper. This paper is pressed against a sensitized photographic print paper, which is then exposed to the light, precisely as in the case of the ordinary 'blue print' or 'brown print.' After exposure, the print paper will upon development show the original black text as white upon a jet black background; the light having been stopped where the original black text was written. This is then used as the object to be photographed as a moving picture; a negative being taken from which as many positives may be thereafter made as are desired. The method is concededly more economical and speedier than the old method, which consisted in preparing the object to be photographed (i. e., the text) by white typed letters upon velvet, or by writing on a black sheet with aluminum ink, or by dusting white powder upon viscous or gelatinous paint. Since the method of producing a copy in reverse lights (i. e., a negative) was very ancient, obviously there was nothing new in the process except the substitute of such a negative of the original copy as the subject of the moving picture. On this simple step the whole patent depends; it is nothing more.

[1] "The art of producing moving pictures has been the subject of an exploitation which has rarely been equaled. Every economy is eagerly seized upon; many acute minds have been at work in all its parts. When an improvement in it appears, it is unreasonable to assume from its apparent

simplicity that its production was a mere matter of routine. It is not as though the need for economy had not existed from the outset, or as though some precedent step in the art had been necessary, and as though the invention had spontaneously appeared as soon as the occasion for it arose. The situation is typical of those cases in which an improvement appears after the art has for long put up with cumbersome methods, without observing that a very simple expedient would have answered quite as well. In such cases the history of the art furnishes good evidence that the change is an invention.

"The only references at bar which are of any moment at all are the article in La Technique Cinématographique, and Stambaugh's patent, both of which antedate Lane's application. The first, which is the better, was directly concerned with the production of texts or titles for moving pictures in white upon a black background. Two methods were disclosed: First, direct photography of white types upon a black board, into whose grooves they were fastened; second, black type printed upon a white background. The first case is the only one which need concern me here. The text is to be set in the usual way, in white on an ordinary black background, and is then photographed under artificial light upon a sensitized photographic plate. On this plate the white letters become 'very opaque,' and the background 'absolutely transparent,' as the writer says. In short, it becomes a negative of the title. This plate is then interposed between a source of light and a lens which concentrates the rays on a moving sensitized film. Obviously, the film so produced will be a positive of the original title—i. e., a negative of the negative film—and may be joined into the positive of the pictures at the proper place. In this process the plate is the 'permanent negative,' and is not the analogue of Lane's printed paper, but of his negative film.

"So far the disclosure is no more than an awkward illustration of the methods in vogue when Lane filed his application. Nevertheless, at the end of the article the writer suggests an alternative which was that a copying paper, written or printed with opaque ink, might be used to make 'a positive print by contact upon a plate.' This would create a plate of white on black, and, if it was used, as apparently the writer assumed, directly upon a moving film, that film would be a permanent negative from which positives could be reproduced. This is the only form which, so far as I can see, can possibly be argued to be an anticipation of Lane. All is left to inference, and it should be observed that there must be a second photographing upon a new film to get a white on black title.

"It is true that, if one accepts as sufficient this somewhat scanty disclosure, the 'positive plate' is used as Lane's printed paper is used, except that the light passes through the plate while it is reflected from Lane's paper. Is that a patentable distinction? I cannot see how one can answer that question in the abstract; it depends upon when it appeared and what it accomplished. It appeared after men had been making such titles for a long time, and no one had thought of making the substitution before Lane. When he did, others have found it convenient to follow him. I agree that the two are photographic equivalents; I agree that, if you put them side by side before a photographer, he would say that they are convertible ways of reaching the same result. That does not trouble me in the least in holding that the choice of one as against the other may be invention. One has proved cheap and quick, while the other has lain dead, neglected by the art, which continued to set white letters or use white paint upon a black background. I ask the conventional question in such cases: If it was so plain, why did nobody do it? Why did they ignore the suggestion of this article, and why do they now imitate Lane? I know no answer to that question except to say that nobody was foresighted enough to see that the photographic plate might easily be changed for a sensitized paper.

"Last is Stambaugh's patent. This was to combine a standing text with each photograph in the series of moving pictures. These pictures, which he called his 'action,' were to appear as white on black. Having so drawn them, he made a negative leaving a white space where the text was to appear in each picture. He then set up his text black on white in front of his camera. The negative of the 'action' he then placed in front of a raw film which was to be his 'positive,' the sensitized surfaces together. By running the two films so in conjunction, he got a reverse of the text on his 'positive' (i. e., white on black), and a true positive of his original 'action,' since the negative reversed the light. Thus he got both 'action' and text as white on black, having reversed the original text but not the original 'action.' Obviously, so

far as concerned the text, he was merely making a negative of it, and was completely removed from Lane's disclosure.

[2] "This is a small invention, not requiring any high degree of imagination. I uphold it, not because it took any technical skill to work it out once it had been conceived. Perhaps it arose from a mere elimination by use and discard of the different possible alternatives. Perhaps it was bound in the end to come. But it had not come after a good many years. The art for one reason or another was still working along with more awkward and expensive processes. Unless I am mistaken, the first experimenter who happens on such a process is entitled to keep it as his own. I can see no reason why others should not be kept within the limits of their own ingenuity while the patent lasts.

"Decree for the plaintiff on claims 1 and 2, without costs."

Pennie, Davis, Marvin & Edmonds, of New York City (Arba B. Marvin and Ernest H. Merchant, both of New York City, of counsel), for appellant.

Munn, Anderson & Munn, of New York City (John K. Brachvogel and Albert J. Clark, both of New York City, of counsel), for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

PER CURIAM. Affirmed on the opinion in the court below.

———

### KENNEBEC BOX CO., Inc., v. O. S. RICHARDS CORPORATION.

### RICHARDS v. BATE et al.

(Circuit Court of Appeals, Second Circuit. March 16, 1925.)

No. 238.

**1. Receivers ☞81—Receiver is but arm of court.**

A receiver is but the arm of the court.

**2. Receivers ☞92—Order surcharging receiver with losses sustained in continuing business two weeks after ascertainment of fact of impossibility of operation except under deficit held error.**

Order surcharging receiver with losses sustained in continuing business two weeks after ascertainment of fact of impossibility of operation except under deficit *held* error, where he had been appointed through the unanimous request of creditors to conduct a losing business, in the hope that it could be made profitable, and the propriety of abandoning the effort suggested to the creditors by notice would not reasonably become apparent until the creditors were given an opportunity to meet and discuss the matter with the court as well as with the receiver, at a hearing set two weeks after discovery of the impossibility of operating at a profit.

**3. Receivers ☞92—Order surcharging receiver with certain items as being preferential payments held erroneous.**

Order surcharging receiver with payments to creditors of the receivership, as preferred payments, because made after ascertainment of fact that business could not be conducted at a profit, *held* error, where the object of the receivership was to turn a losing into a profitable business, and all parties believed when such payments were made that the assets when reduced to cash would be sufficient to pay all creditors in full.

Appeal from the District Court of the United States for the Eastern District of New York.

Creditors' bill by the Kennebec Box Company, Inc., and others against the O. S. Richards Corporation, in which proceeding Lee S. Richards was appointed receiver and subsequently relieved of that office by the appointment of J. B. Johnston in his place. From an order surcharging the former receiver with certain items on objection by J. Herbert Bate and another (299 F. 874), he appeals. Reversed.

See, also, 299 F. 871, 5 F.(2d) 951.

The case above entitled is a creditors' bill of the usual kind, seeking to conserve the property of the defendant corporation in the usual way. The bill alleged and the answer admitted that, although defendant could not meet its obligations as they matured, it had assets of upwards of $150,000 against liabilities of about $108,000.

A receiver was appointed on December 7, 1922. The creditors of this concern were very active, organized a committee of their own, and petitioned the court to appoint a receiver of their own choice, viz. the present appellant, Mr. L. S. Richards. The reasons for urging his appointment (first as coreceiver) was that he was familiar with the defendant's business and had at one time been its active manager.

The receiver originally appointed represented to the court that the business was a small one, that two receivers were unnecessary, and tendered his resignation, which the court accepted, and on January 27, 1923, appointed Mr. Richards as sole receiver, with directions embodied in the order of appointment giving him, in substance, the fullest powers to continue defendant's business and to "operate and manage [de-